**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

FILED

JAN 1 2 2012

CIRCUIT COURT CLERK
BY _____ D.C.

**TAMI LYNN MAHONEY,**

   **Plaintiff,**

v.                                            **No. CT-005567-08**
                                              **Division VII**

**ROBERT EDWARD MAHONEY,**

   **Defendant.**

---

### FINAL DECREE OF DIVORCE

---

This cause came on to be heard on March 1, 2, 3, and 7, June 20 and July 13, 2011,

before the Honorable Donna M. Fields, Judge of Division VII of the Circuit Court of Shelby

County, Tennessee; upon the sworn Complaint for Divorce filed herein by the Plaintiff,

Tami Lynn Mahoney on November 18, 2008; the Answer filed herein by the Defendant,

Robert Edward Mahoney on May 15, 2009; sworn testimony of both parties; the sworn

testimony of the following witnesses: Joy Susanne Marsh, Shari Myers, James Koerber,

by stipulated report; Jason Hensley, C.P.A.; Tiffany Lee;  statement and arguments of

counsel for both parties; the marked and numbered Exhibits 1-61; and upon the entire

record as a whole.

   From all of which it appears to the Court that:

1.   Husband has stipulated to the grounds of Inappropriate Marital Conduct.

2.   The issues to be decided by the Court are:

a. Distribution of marital assets;

b. Marital debt;

c. Division of personalty;

d. Primary residential parent status;

e. Child support;

f. Parenting time;

g. Alimony;

h. Attorney's fees;

I. .Court costs.

3.      This Court has jurisdiction in all necessary particulars in this case.

4.      The parties were married December 3, 1993.  There have been three (3) children born unto the parties during the marriage, to wit: Shelby Laurel Anne Mahoney, born August 26, 1994; Ethan Robert Mahoney, born June 23, 2000; and Hunter Cole Mahoney, born January 13, 2005.

5.      In 2007, the parties borrowed $350,000.00 from Wife's parents, Bob and Sue Marsh, to form Cordova Collision Repair -"CCR", which eventually was comprised of two locations.  Wife's parents received 10% ownership interest of "CCR".  Husband and Wife stipulated to the value of the parties' 90% interest in "CCR", as of October 2010, at $227,000.00

6.      In October 2008, Wife found Husband burning checkbooks and statements in their back yard.  Husband claimed, and the photographs showed such dates, that those were old checks and records which the parties' no longer needed.

7.    Wife mostly stayed at home with children during the eighteen-year marriage, but sometimes had part-time jobs and sometimes cleaned the parties' business at night for spending money.

8.    Proof was presented that Husband's monthly adjusted gross income was $20,300.00, in 2009, based on the 2009 Federal Tax Return, filed on October 14, 2010. Testimony was presented that Wife's anticipated monthly gross income from her new part-time work at the University of Memphis, Department of Employee Health & Safety, will be $1,166.66, gross (based on 28 hours per week, at $10.00 per hour). Wife's anticipated monthly gross income from her work schedule at the "GAP" is $114.66 (based on average of 14 hours per month, at $8.14 per hour). The total anticipated monthly gross income for Wife is $1,281.32.

9.    Shari Myers was appointed Guardian *ad Litem* by Order on June 28, 2010, and served in this capacity until the final hearing on July 13, 2011. Attorney Myers coordinated with the counselors for the children and represented the best interests of the minor children.

10.    The Guardian *ad Litem* testified at trial that the children reported both parents were dating. Mr. Mahoney finally admitted this to the Guardian *ad Litem* Mrs. Mahoney did not.

11.    Husband repeatedly testified that he had no romantic relationship with anyone, particularly Connie Mandrozos. Finally, husband admitted that he and Ms. Mandrozos were considering moving her to Memphis, Tennessee, and that finally happened. Ms. Myers found that both parties have had issues with their teenage daughter, Shelby, but

3

particularly Mrs. Mahoney. The mother and daughter have had a volatile relationship, at best. Mr. Mahoney has involved his children in this divorce, but with counseling he has stopped enmeshing his children in the arguments. Shelby had difficulty being between her Mother and Father, but that has calmed as well with her now in counseling.

12.    Shelby is now primarily residing with her Father and visiting with her Mother. The two younger sons, Ethan and Hunter, are primarily residing with their Mother and visiting with their Father  The Guardian *ad Litem* fees have been reduced to judgment and have been paid so far by Mr. Mahoney.

13.    The parties' marital residence of 1878 Wooduck Cove, Germantown, Tennessee, was sold prior to the divorce trial and a deficiency balance (originally $13,000.00) remains on that debt to Triumph Bank. Mr. Mahoney testified that he has been repaying the deficiency at $788.00 per month. The vast majority of personal property was left in the home when Husband and Wife separated. Wife is in possession of most of the parties' marital personal property. Husband purchased some new furniture from Ashley Home Furnishing to furnish his new household upon separation, which property is marital property. Husband requests that he receive the air compressor, his Mother's piano and modified table which were last in possession of Wife.

14.    The parties have no retirement or pension funds.

4

15.    During the course of the divorce litigation discovery disputes erupted regarding
financial information on Cordova Collision Repair.  "CCR" is the only significant marital
asset to divide between the two parties.

16.    In dividing the marital property and debt, the Court must consider all of the
factors set out in T.C.A. §36-4-121(c).  The Court finds that Husband has relatively
greater ability than Wife to acquire future capital assets and income, and that the
present economic circumstances of Husband give Husband the greater ability to service
the majority of the marital debt.

The parties' marital assets, liabilities, and their division, are listed below:

## A.    MARITAL ASSETS:

### 1. Business Entity:

Cordova Collision Repair is the only substantial asset of the parties.  Wife shall
receive one-half of the stipulated value of the parties 90% interest of the business in the
amount of $113,500.00, (plus statutory interest)  that is to be paid out over ten (10)
years, or longer if necessary, at $950.00 per month, as a division of marital assets.

The proof was reopened in July 13, 2011, to receive additional testimony from
Mr. Mahoney as to the closing of the second location of "CCR" on Pleasant View Road,
as well as the general condition of the company as of that date.  Defendant testified that
he negotiated severance of the lease at the Pleasant View location, which location was
subsequently closed.  Mr. Mahoney testified that his business and income have been
reduced as a result.  He further testified that his sales have dropped because he no
longer has space to accommodate all the repairs.  He is, as he has testified repeatedly,

concerned about loss of certain insurance accounts, which will effectively close the

business. As of the time of the last hearing, no insurance accounts had been lost and

the Court was not persuaded that this additional testimony of Mr. Mahoney showed any

significant change in the company's health. The testimony of Mrs. Mahoney's sister,

Tiffany Lee, was that she was the former bookkeeper for "CCR" and that she was

allowed, per this Court's Order of April 12, 2011, to examine the books and records of

"CCR". She testified that Mr. Mahoney's books were in total disarray, such that she was

unable to discern the financial state of "CCR". She stated that Mr. Mahoney had no

regular manner of bookkeeping and that obligations of the business appeared to be

being neglected.

2.   **Vehicles:**

    a.   2005 Honda Odyssey Van

        **Fair Market Value:  $14,445.00**

        Debt:  $0.00 Wife shall receive this vehicle, which is currently titled in the
Husband's name.  Husband shall transfer title to the Wife.

    b.   2007 Chevy Silverado 1500 Crew Cab

        **Fair Market Value:  $11,850.00**

        Debt:  Unknown

        In Husband's name, but previously paid for by business.  Husband shall
receive this vehicle, and debt, if any.

    c.   Motorcycle

        **Fair Market Value: $4,000.00**

**Debt:** **$0.00**

The motorcycle shall be sold and the proceeds paid to Mrs. Mahoney as division of marital assets.

d. Jason Hensley, C.P.A., testified that Mr. Mahoney purchased four (4) all terrain vehicles and that three (3) were for personal use. Those three (3) personal four-wheelers are to be sold and the money used to pay debt assigned to Mr. Mahoney.

3. **Marital personalty**

a. Furniture and personal property located at 1435 Grove Meadow Court, Germantown, Tennessee 38138 (Wife's residence)

**Fair Market Value: $5,000.00**

**Debt: $0.00**

**Equity: $5,000.00**

Wife will receive the furniture and personal property with the exception of Husband's property remaining at the address (a stand-up air compressor, Husband's Mother's piano and a modified kitchen table which will be returned to Husband upon entry of the Final Decree of Divorce, if said items still exist).

b. Furniture and personal property located at 1925 Edwards Mill Road, Germantown, Tennessee 38139 (Husband's residence)

**Fair Market Value: $5,645.00**

**Debt: $5,645.00**

**Equity: $0.00**

Debt is on furniture purchased since Husband moved out of the marital

residence. Husband shall receive this furniture and the accompanying

debt thereon.

5.    **Bank accounts**

a.        Bank of America, Checking account ending in #6670

Robert Edward Mahoney

2265 Easton Drive, Cordova, Tennessee 38016

**Balance as of 5/20/2010:  $211.01**

Husband shall receive this account.

b.        Bank of America, Savings account ending in  #9767

Robert Edward Mahoney

2265 Easton Drive, Cordova, Tennessee 38016

**Balance as of 5/20/2010: $16.17**

Husband shall receive this account.

c.        Triumph, Checking Account ending in  #6434

Robert Edward Mahoney

2265 Easton Drive, Cordova, Tennessee 38016

**Balance as of 5/28/2010: $4,929.12**

Husband shall receive this account.

d.        SunTrust, ending in  #0715

Tami Lynn Mahoney

8

1435 Grove Meadow Court, Germantown, Tennessee 38138

**Balance as of 2/15/2010: $0.00 (Account closed)**

e.       **Triumph Bank account ending #2721**

Ethan Robert Mahoney and Tami Lynn Mahoney

2265 Easton Drive, Cordova, Tennessee 38016

**Balance as of 12/31/2010: $13.30**

This account shall be closed and Wife shall receive the balance.

f.       **Triumph Bank account ending #2739**

Shelby Laurel Anne Mahoney and Tami Lynn Mahoney

2265 Easton Drive, Cordova, Tennessee 38016

**Balance as of 12/31/2010: $20.89**

This account shall remain the property of Shelby Mahoney.

TOTAL AMOUNT OF MARITAL ASSETS:          $273,096.00

TOTAL MARITAL PROPERTY RECEIVED BY WIFE:          $136,945.00

MARITAL PROPERTY TO BE RECEIVED BY HUSBAND:          $136,151.00

**B.       MARITAL LIABILITIES AND TO WHOM ASSIGNED:**

a.       Joshua A. Brink, DDS

Pediatric Dentistry

65665 Stage Road, Suite 2

Bartlett, Tennessee 38134

**Balance as of 2/14/2011: $(549.20) Husband assumes.**

(includes balance owed for all three (3) children)

9

b.      Memphis Junior Olympic Volleyball Association

6161 Shelby Oaks Drive, Memphis, Tennessee 38134

**Balance as of 10/27/2010: $(1,616.50)**

Shelby's participation in the 2008-2009 volleyball season Husband

assumes.

c.      ServiceMaster of Germantown

715 Chaney Cove, Suite 102

Collierville, Tennessee 38017

**Balance as of 10/27/2010:  $(1,000.00)**

*This bill for a broken water pipe in the former marital residence from*

*December, 2008.* Husband assumes.

d.      CitiFinancial Acct ending #0081 (Ashley's Home Furnishings)

Robert Edward and Tami Lynn Mahoney

**Balance as of October 14, 2008:    $0.00**

**Balance as of October 2010:       $(5,645.00) Husband assumes.**

Used to purchase furniture for Robert Edward Mahoney after

the parties separated. Husband shall receive the furniture as well as this

debt.

e.      Great American Home Store, Account

Robert Edward and Tami Lynn Mahoney

For sofa, loveseat and recliner which Wife shall receive and shall be

responsible for the debt.    **$(4,000.00) Wife assumes.**

f.	Triumph Bank Deficiency Loan from sale of Wooduck Cove house

Robert Edward Mahoney

**Balance as of 6/4/2010:   $13,386.03**

**Current Balance as of 2/15/2011 should be approximately $(7,082.03)**

**Husband testified that he pays $788.00 per month.   Husband**

**assumes.**

g.	Margaret Chesney, Esq.

Former Attorney for Robert Edward Mahoney

**Balance as of 6/8/2009:   $(11,013.83) Husband assumes.**

h.	Internal Revenue Service

Amount due and owing for 2009 Taxes

Balance reflected on Internal Revenue Service 12/2010 statement less

monthly payments assumed to have been made

**in 12/2010, 1/2011, and 2/2011   $(12,585.36)   Husband assumes.**

i.	Consolidated Recovery Systems

Robert Edward Mahoney

Account ending 8328

**Balance as of 11/12/2010: $1,800.00**

**Estimated balance as of 2/21/2011: $(1,000.00)   Husband assumes.**

j.	Robert and Sue Marsh

Amount owed by Wife to parents for payment of Attorney fees and expenses for Tami Lynn Mahoney.  Duplicated in "K" (Ms. McCrary's fees).  **$(55,583.00)**

k.      Payment of living expenses for Wife and children by Mr. and Mrs. Marsh. The Court finds this sum to be a gift.

**Wife shall receive this debt.$(10,396.57) (See spreadsheet-Exhibit A).**

l.      McCrary and Associates

Tami Lynn Mahoney attorney fees and expenses

**Balance as of 2/14/2011:   $(89,451.00) Wife (includes # j) (See spreadsheet – Exhibit A).**

m.      William P. Zdancewicz -Robert Edward Mahoney attorney fees and expenses  **Husband shall receive this debt.$(51,000.00) (See spreadsheet-Exhibit A).**

n.      Medical Bills paid by Wife on behalf of minor children

To be paid by Robert Edward Mahoney

**Pursuant to prior Court order    $(659.48)  Husband assumes.**

o.      Shari Myers, GAL, split between the parties on a 80%/20% basis of total of $15,476.22.

**Husband shall be responsible for 80% of bill  = $12,380.98**

**Wife shall be responsible for 20%.of bill =         $3,095.24**

**TOTAL AMOUNT OF MARITAL LIABILITIES:          $201,078.62**

**TOTAL MARITAL LIABILITIES RECEIVED BY WIFE:      ($47,546.24)**

**TOTAL MARITAL LIABILITIES TO BE PAID BY HUSBAND:  ($153,532.38)**

**ALIMONY**

The Tennessee legislature has defined "to be rehabilitated" to mean:

[t]o achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.  T.C.A. §:36-5-12)(e)(1).

It is the intent of the general assembly that a spouse who is economically disadvantaged, wherever possible, by the granting of an order for payment of rehabilitative alimony.

In determining the nature, amount, length and manner of alimony, the Court must look to T.C.A. § 36-5-121 (i) (2008) which provides twelve (12) factors which the Court must consider.  This Court is of the opinion that the most relevant considerations are:

(1).    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit-sharing or retirement plans and other sources;

(2).    The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of the party to secure further education and training to improve such party's earning capacity to a reasonable level;

13

(3).    The duration of the marriage;

(9).    The standard of living of the parties established during the marriage;

(10).    The extent to which each party has made such tangible and intangible

contributions to the marriage as monetary and homemaking contributions, and tangible

and intangible contributions by a party to the education, training, or increased earning

power of the other party;

(11).    The relative fault of the parties in cases where the Court at its discretion deems

it appropriate to do so;

This is a marriage of eighteen years duration. The parties' standard of living was

severely compromised when their marital residence was foreclosed upon, leaving a

deficiency balance of approximately $13,000.00 and on which Mr. Mahoney has been

paying $788.00 per month.

Mrs. Mahoney has stayed home with the parties three (3) children and made

contributions to the marriage as a homemaker. She has been supportive of Mr.

Mahoney in his business venture, and assisted in obtaining from her parents a

$350,000.00 loan for the purpose of opening Cordova Collision Repair.

There was considerable testimony concerning what Husband's income has been

and will be for future years. The parties' accountant stated that he felt that the 2010

income would be the same as 2009. In the year 2011, Husband closed the second

location for "CCR," and testified in July, 2011, that the income had dropped as a result.

However, when the Wife's sister, Tiffany Lee, the former bookkeeper for the business,

was given access to the business for the purpose of looking at the income, she noted
that there was gross income for April, 2011, for "CCR" of $157,000.00.

There have been documents filed on behalf of Husband stating that his monthly
gross income was $20,000.00 (plus) per month and a document showing that his
income is $12,000.00 (plus) per month. It is impossible for this Court to know what the
actual figures are, as a result of Mr. Mahoney doing his own bookkeeping..His former
bookkeeper, Tiffany Lee, was unable to discern from his bookkeeping what the actual
facts were.

Therefore, considering the testimony at trial, the Court feels that it is reasonable
to use a figure of $15,000.00 per month gross for Mr. Mahoney for a monthly income.
This figure is based upon testimony of the parties' accountant, Jason Hensley, C.P.A.,
and the testimony of Tiffany Lee concerning income to the business, and the
discrepancy between Mr. Mahoney's multiple 14-C and 14-D forms. It is noteworthy
that Mr. Mahoney had a business manager at each of the two (2) locations. It is unclear
to this Court what actually has happened to the manager from the Pleasant View
location, but clearly there is a reduction in cost with the closure of the second location.
Mr. Mahoney testified that there is a reduction in work output, but the figures testified to
by Tiffany Lee belie that statement.

Mrs. Mahoney is in need of alimony in addition to child support to assist her
rehabilitation so that she may reach a level equal to that enjoyed by the parties during
the marriage. It is entirely feasible for Mrs. Mahoney to attend college and obtain a
bachelor's degree to better enable her to be a member of the workforce and a

15

productive member of society. She will need assistance in doing that. She has sixty to sixty-five hours toward a college degree. She testified that her monthly gross income from both of her jobs would be approximately $1,281.32. It is appropriate for Mrs. Mahoney to receive rehabilitative alimony in the amount of $2,000.00 per month for four (4) years to be reduced to $1,000.00 per month for an additional four (4) years. That should be sufficient to give Mrs. Mahoney a chance to finish a four-year university and work part-time, or matriculate part-time, over the eight (8) year period. This alimony will be reportable to Wife and deductible to Husband. Further, the figure of $15,000.00 per month will be used to calculate monthly child support from each of the two parties. The older child, Shelby, is presently living with Mr. Mahoney primarily and the two younger children are living with Mrs. Mahoney. Therefore, two work sheets will need to be prepared and then the two figures will be balanced against each other to find a monthly amount payable from one to the other, if any.

**ATTORNEY FEES**

The Court heard testimony from Husband at earlier hearings initially denying inappropriate marital conduct. Further, Husband repeatedly refused to properly comply with discovery requests which increased the litigation expenses for Wife as she was required to approach the Court for relief during the discovery process. Prior fee and costs requests against Mr. Mahoney:

> a. **$5,000.00** which is one-half of the amount used to pay James Koerber to value the parties interest in Cordova Collision Repair, LLC. The Court orders $5,000.00

16

b. **$11,544.35** from Affidavit of S. Denise McCrary, Esq. which was
filed on January 21, 2010 . (See Order on Motion to Reinstate Prior
Orders of the Court entered 7-30-2010). **The Court awards
$7,500.00.**

c. **$14,103.90** fees requested in preparation of and hearing of Wife's
Petition for Contempt and Amended Petition for Contempt which
was heard on January 22, 2010 and February 5, 2010, in which
testimony of Husband was found by the Court not credible and
Husband was sentenced to spend forty eight (48) hours in jail. The
**Court awards $8,500.00**

d. **$500.00** fees ordered by this Honorable Court on June 4, 2010,
(Order entered on July 30, 2010) for Motion to Reinstate Prior
Orders of the Court.

e. **$3,298.50** fees requested in preparation of and hearing of
Husband's Motion to Bifurcate Trial which was denied, and Wife's
Motion to Strike which was granted. Both of these Motions were
heard on February 11, 2011. **The Court awards $2,500.00**

In addition, pursuant to T.C.A.§ 35-5-121 9(d)(5), and (H)(1), the Court orders
Husband to pay the sum of $25,000.00 to Wife to be applied to her attorney fees, as
alimony *in solido,* based upon the statutory provisions and considering conduct by
Husband, including but not limited to: his being held in Contempt of Court; his dilatory

17

actions in this litigation and his lack of truthfulness throughout this action. Additionally, the Court considered the Husband's heavy debt assignment in this cause.

### Minor Children of the Parties

It is agreed between the parties that it is the best interest of the parties' minor children, Shelby Laurel Anne Mahoney, born 8-26-94, to be with Husband as Primary Residential Parent and, Ethan Robert Mahoney, born 6-23-00, and Hunter Cole Mahoney, born 1-13-05, to be with Wife as, Primary Residential Parent.

Plaintiff's address is, 1841-1 Birch Post Cove, Germantown, Tennessee 38138. Defendant's address is, 1925 Edwards Mill Road, Germantown, Tennessee 38139.

A Permanent Parenting Plan is being entered contemporaneously with the Final Decree.

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** as follows:

Plaintiff/Counter-Defendant, Tami Lynn Mahoney, and Defendant/Counter-Plaintiff, Robert Edward Mahoney, are declared divorced pursuant to stipulated grounds of Inappropriate Marital Conduct on the part of the Husband and the parties are restored to all the rights and privileges of unmarried persons.

The counter-complaint herein is dismissed.

The parties have heretofore divided their personal property and neither is to make any claim upon the personal property in possession of the other, with the exception of three items of personalty that belong to the Husband that were last in the

Wife's residence: a stand-up air compressor, Husband's Mother's piano and the modified kitchen table.

Husband shall assist Wife in transferring her health insurance, if possible.

This Court approves and adopts the agreed Permanent Parenting Plan and has signed same on January, 12, 2012.

During periods when a child is not with a parent, that parent shall have the following rights:

(A)  The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations;

(B)  The right to send mail to the child, which the other parent shall not open, or censor;

(C)  The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any event of hospitalization, major illness or death of the child;

(D)  The right to receive directly from the child's school upon written request which includes a current mailing address and upon payment of reasonable costs of duplicating, copies of the child's report cards, attendance records, names of teachers, class schedules, standardized test scores and any other records customarily made available to parents;

(E)  Unless otherwise provided by law, the right to receive copies of the child's medical, health or other treatment records directly from the physician or health care provider who provided such treatment or health care upon written request

which contains a current mailing address and upon payment of reasonable costs of duplication; provided, that no person who receives the mailing address of a parent as a result of this requirement shall provide such address to the other parent or a third person;

(F) The right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child;

(G) The right to be given at least forty-eight (48) hours notice, whenever possible, of all extra-curricular activities, and the opportunity to participate or observe, including, but not limited to, the following:

(i)      School activities;

(ii)     Athletic activities;

(iii)    Church activities; and

(iv)    Other activities as to which parental participation or observation would be appropriate;

(H) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than two (2) days, an itinerary including telephone numbers for use in the event of an emergency; and

(I) The right of access and participation in education, including the right of access to the minor child or children for lunch and other activities, on the same basis that is provided to all parents, provided the participation or access is

20

reasonable and does not interfere with day-to-day operations or with the child's educational performance.

Any of the foregoing rights may be denied in whole or in part to one or both parents by the Court upon a showing that such denial is in the best interests of the child. Nothing herein shall be construed to prohibit the Court from ordering additional rights where the facts and circumstances so require.

**T.C.A. § 36-4-134(a) Notice.** This decree does not necessarily affect the ability of a creditor to proceed against a party or a party's property, even though the party is not responsible under the terms of the decree for an account, any debt associated with an account or any debt. It may be in a party's best interest to cancel, close or freeze any jointly held accounts.

All other Orders set forth in the body of this decree shall be the Orders of this Court.

All parties are ordered to execute any documents necessary to carry out the terms of this Court's orders.

Both parties are prohibited from, or allowing anyone in their divorce, making derogatory remarks about the other parent in the presence of or in the hearing of the minor children.

Any Motions or Petitions heard or filed in this cause which have not been ruled upon are hereby dismissed.

The costs in this cause are assessed against Husband, for which execution may issue.

21

_____
JUDGE DONNA M. FIELDS

_____
Date

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading has been served upon the attorneys for the Plaintiff/Counter-Defendant and attorney for Defendant/Counter-Plaintiff via U.S. Mail at the addresses referenced above, on this the ⅃2 day of _____, 2012.

_____
DEPUTY COURT CLERK

22

| Wife's Assets | Husband's Assets | Children's Assets |
|---|---|---|
| CCR 1/2 value in 90% ($113,500 + interest) paid at $950/mo for 10 yrs | CCR 1/2 interest in 90% ($113,500) | Triump acct 2730 ($20.89) to Shelby |
| 2005 Odyssey ($14,445) | 2007 Silverado (11,850) | Triumph acct 2721 ($13.30) to Ethan |
| Motorcycle to be sold, proceeds to Wife (value of $4000) | 3 ATVs to be sold to pay debt | |
| Furniture and personally at Grove Meadow ($5000) | Piano, air compressor, table | |
| | Furniture at 1925 Edwards Mill ($5645) | |
| | BofA acct 6670 ($211.01) | |
| | BofA acct 9767 ($16.17) | |
| | Triumph Acct 6434 ($4,929.12) | |
| | Suntrust Acct 0715 ($0) | |
| **Total assets $136,945** | **Total assets $136151.3** | |
| **Wife's Liabilities** | **Husband's Liabilities** | |
| Great American Home Store (-$4000) | Dentist (-$549.20) | |
| McCrary att. fees (-$40,451) | Volleyball (-$1,616.50) | |
| GAL fee, 20% (-$3095.24) | Servicemaster (-$1000) | |
| Debt owed to Wife's parents (-$10,396.67) (gift) | Ashley Home Furn. (-$5645) | |
| | House sale deficiency (-$7,082.03) | |
| | Att. Chesney (-$11,013.83) | |
| | IRS 2009 (-$12,585.36) | |
| | IRS 2010 (unknown) | |
| | Consolidated Recovery (-$1000) | |
| | Bill Z att. fees (-$51,000) | |
| | Medical bills (-$659.48) | |
| | GAL fee, 80% (-$12,380.98) | (total -$104,532.38) |
| **Total liabilities $47,546.24** | **Attorney's Fees from prior hearings:** | |
| | 1/2 cost of CCR appraisal ($5000) | |
| | Reinstating Prior Orders ($7500) | |
| | Petition for Contempt ($8500) | |
| | Motion to Reinstate Orders ($500) | |
| | Motions to Bifurcate, Strike ($2500) | (prior att. fees = $24,000) |
| | Alimony in solido for att fees $25,000 | |
| | **Total liabilities $153,532.38** | |
| **W's income and alimony** | **H's income** | |
| $1,281.32/mo. Gross | $15,000/mo. Gross | |
| $2000/mo for 4 yrs, then $1000/mo for 4 yrs | less $1511 child support | |
| $1511 child support | less $2000 alimony | |
| | less assigned debt | |

Each party will be responsible for their own credit card debts.


EXHIBIT
A